IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHARLES WILLIAMS                                              PLAINTIFF

v.                              05-CV-2020

ROBERT "BOB" MIKLES, individually
and in his official capacity as
Chief of Police of the City of
Huntington, Arkansas, and
STEVE LAYNE, individually
and in his official capacity as
Police Officer of the City of
Hartford, Arkansas                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants' Motion for Summary Judgment (Doc. 14.), Plaintiff's response (Doc. 22.) and Defendants' reply (Doc. 26.) Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and § 1985 alleging Defendants violated his First Amendment constitutional right to free speech, expression and petition. Plaintiff alleges Defendants did not have probable cause to arrest him. Plaintiff also alleges state law claims of false arrest, battery, and malicious prosecution. For their motion, Defendants contend Plaintiff's constitutional rights were not violated and they are entitled to qualified immunity. Defendants further contend Plaintiff has failed to properly allege claims against the Cities of Hartford and Huntington. In response, Plaintiff contends his constitutional rights were violated, the qualified immunity defense is without merit, and the cities are

liable for the Defendants' acts. Based on the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

**Background**

Charles Williams ("Plaintiff") and James Roberson ("Roberson") were neighbors in Hartford, Arkansas, which is located in Sebastian County. On August 21, 2004, Plaintiff traded a digital video disc player ("DVD player") for an inoperable truck owned by Roberson's 16 year-old son. The DVD player stopped working that evening, and Roberson went to Plaintiff's house and demanded the return of his son's truck. Plaintiff told Roberson to go home and walked with Roberson back to his property. Plaintiff contends Roberson was intoxicated and fell three times on his way back home. After falling the third time, Roberson yelled to his wife to call the police because Plaintiff was "trying to kill him". (Doc. 1 ¶ 13.)

At approximately 9:00 p.m., Hartford Police Officer Steve Layne ("Officer Layne") was dispatched in response to a domestic[1] fight between Plaintiff and Roberson. (Doc. 14 Ex. A Layne Dep. at 8.) Officer Layne was not in uniform and was not driving a police car. (Layne Dep. at 12) Sebastian County Sheriff's Deputy Shane

---

[1] Ark. R. Crim. Pro. 4.1(a)(iv) allows for the warrantless arrest of a person who the officer has reasonable cause to believe that such person has committed acts which constitute a crime...against a family or household member and which occurred within four hours preceding the arrest if no physical injury was involved or 12 hours preceding the arrest if no physical injury was involved. Rule 4.1(a)(3) allows for the warrantless arrest of any person the officer has reasonable cause to believe committed any violation of law in the officer's presence.

Reeves ("Deputy Reeves") and Huntington Police Chief Robert Mikles ("Chief Mikles") arrived to assist[2] Officer Layne. Plaintiff waited in his yard while Officer Layne and Chief Mikles went inside Roberson's house. Officer Layne observed Roberson to have abrasions around his neck and scrapes on his hands and knees. Chief Mikles observed grass stains and dirt on Roberson's knees. Roberson told Officer Layne and Mikles that Plaintiff grabbed him around his neck and took him to the ground. (Layne Dep. at 9-10.) Officer Layne asked Roberson if he wanted to press charges against Plaintiff, but Roberson declined. When Officer Layne returned to Plaintiff, he advised him that Roberson declined to press charges. Upon hearing this, Plaintiff became "kind of upset". (Doc. 14 Ex. B Plaintiff Dep. at 51; Doc. 24 ¶ 16.) His voice was raised (Doc. 14, Billy Newman, Jr. Dep. at 11; Charles Shane Williams Dep. at 15) and his face red. (Doc. 14, Charles Shane Williams Dep. at 15.) He claimed he had done nothing to justify any criminal charges. (Doc. 24 ¶ 16.) He further claimed that Roberson had committed numerous criminal offenses against him, including terroristic threatening, public intoxication, disorderly conduct, and trespassing. (Doc. 1 ¶ 21.) Officer Layne advised Plaintiff to calm down (Doc. 16 ¶ 17.) as there were people outside who could

---

[2]The Hartford and Huntington Police Departments have a "Mutual Aid Agreement" where each police department is granted jurisdictional arrest authority in emergency or probable cause situations within the other's city limits. (Doc. 26 Ex. 1.)

hear everything that was going on, including women and children. (Layne Dep. at 19; Plaintiff Dep. at 45-46.) Plaintiff contends Chief Mikles told him to shut his mouth or he would be taken to jail. (Doc. 1 ¶ 22.) At this point, Plaintiff raised his arm, pointed his finger at Chief Mikles and said, "I don't like you f------ to begin with." (Doc. 24 ¶ 18.) Plaintiff further told Chief Mikles to "shut his f------ mouth". (Plaintiff Dep. at 49.) Officer Mikles then told Plaintiff he was under arrest and grabbed his right arm to pull it behind his back. (Doc. 1 ¶ 27.) Officer Layne held Plaintiff's left arm. (Doc. 14 at 11.) Plaintiff contends prior injuries to his back, neck, and right shoulder prevented his arm being placed behind his back without causing pain. (Doc. 1 ¶ 28.) Officer Layne contends Plaintiff tightened his arms by his side to prevent being handcuffed. (Doc. 14 Ex. A; *see also* Doc. 24 Ex. 1). When the officers could not get Plaintiff's hands behind his back, Deputy Reeves performed a "front leg sweep" on Plaintiff which resulted in Plaintiff being forced to the ground. (Doc. 14 Ex. A; *see also* Doc. 24 Ex. 1.) Officer Layne then placed handcuffs on Plaintiff and he was taken to the Sebastian County Adult Detention Center by Chief Mikels on a charge of disorderly conduct which was later dismissed.

Plaintiff contends Chief Mikles and Officer Layne violated his First Amendment rights of free speech, expression and petition. Plaintiff further contends Chief Mikles and Officer Layne committed

the state law offenses of battery, false arrest, and malicious prosecution. Plaintiff also contends the Cities of Hartford and Huntington are liable for the unconstitutional tortious acts of the Defendants. Defendants assert the defense of qualified immunity.

**Discussion**

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 316 (1986).

**A. Qualified immunity**

Qualified immunity protects "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Chief Mikles and Officer Layne contend they are entitled to qualified immunity because they violated no clearly established constitutional rights of which they knew or reasonably should have known.

In analyzing qualified immunity, courts conduct a two-part inquiry. First, they must consider the threshold matter of whether the facts alleged, taken in the light most favorable to the plaintiff, show the defendants' conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004). If a constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity. *See Saucier*, 533 U.S. at 201. If a violation could be established on the facts alleged, the second inquiry explores whether the right was clearly established at the time the violation occurred. *See id.* In determining whether the right is clearly established, a court must determine whether it would be clear to a reasonable official that his conduct was unlawful. *See id.* at 202. Further, courts examine pre-existing law to see if it would be apparent to reasonable officials that their actions were unconstitutional. *See Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir. 1998).

## 1. 1st Amendment

Plaintiff contends Chief Mikles and Officer Layne violated his First Amendment rights of free speech, expression and petition when they arrested him following the profanity directed at Chief Mikles. (Doc. 1 ¶¶ 51-52.) Plaintiff contends he has suffered damages, including payment of medical bills, loss of consortium with his wife, loss of sleep, taking excessive pain medication, an inability

to garden, hunt, and groom himself, and endured great emotional pain and suffering.

In determining whether Chief Mikles or Officer Layne is entitled to qualified immunity, the Court must determine whether they violated a constitutional right and whether that right was firmly established. *See Avalos*, 382 F.3d at 798. The right of free speech is not absolute at all times and under all circumstances. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. *Id*. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. *Id*. Yet, the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). The Supreme Court has said that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 107 S.Ct. At 2510.

Plaintiff's Complaint alleges his statement did not cause a public disturbance, was not unreasonably loud, and would not prompt

a reasonable officer to take any definitive action.[3]  Defendants contend the words spoken by Plaintiff are 'fighting' words and are not protected by the First Amendment.  In *Chaplinsky,* the test for determining whether language falls within this proscription is "what men of common intelligence would understand would be words likely to cause an average addressee to fight."  *Id*. at 573, 62 S.Ct. 766.  Defendants argue the Arkansas Supreme Court found the words, "I'm talking to you, you mother f------- pig," when directed toward a police officer met the 'fighting' words test of *Chaplinsky*.  *See Bousquet v. State*, 261 Ark. 263 (1977).  Yet, in *Bousquet*, the appellant did more than curse at the officer.  She slapped him, grabbed his shirt which tore, and pushed him, all the while cursing at him.  *Bousquet*, 261 Ark. at 265, 266.  In *Buffkins v. City of Omaha*, 922 F.2d 465 (8th Cir. 1990), the Eighth Circuit

---

[3]We note that in Plaintiff's four-page response, he states that case law is clear regarding the use of vulgarity toward a police officer is not grounds for arrest.  Yet, he cites none of the 'clear' case law.  We do not find the case law to be so clear. *See e.g., Woodward v. Gray* 241 Ga.App. 847, 527 S.E.2d 595, 599-600 (2000) (listing as examples of fighting words: "son of a b*tch," "motherf***er," "bastard," "b*tch," "motherf***ing pig," and "pig")(citation ommitted); *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54, 55-56, 58 (1980) (holding that f***ing pig" and other epithets were fighting words); *City of Springdale v. Hubbard*, 52 Ohio Ap.2d 255, 369 N.E.2d 808, 810-12 (1977) (finding "f***ing pigs" to be fighting words).  *But see United States v. Poocha*, 259 F.2d 1077, 1082 (9th Cir. 2001) (holding that clenching fists, sticking out chest, and yelling "f*** you" to officer was not fighting words); *Nichols v. Chacon*, 110 F.Supp.2d 1099 (W.D. Ark. 2000)(display of middle finger in upward gesture, commonly referred to as "flipping someone off," did not constitute "fighting words").

concluded that an individual's reference to the arresting officers as "asshole" was not within the category of "fighting words" excluded from protection of the First Amendment. It stated there was "no evidence Buffkins' speech was an incitement to immediate lawless action." Id. at 472. Moreover, it noted that no one outside the interview room heard the comment. *Id*.

Based on *Chaplinsky*, the Arkansas Supreme Court construed Ark. Code Ann. § 5-71-207(a)(3) of the Arkansas disorderly conduct statute as prohibiting fighting words or conduct. *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). Section 5-71-207(a)(3) states "[a] person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof, he in a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response. Chief Mikels and Officer Layne were faced with an agitated individual who was using profanity in a raised voice. There was a crowd of 5 to 14 people around. Plaintiff provided testimony of another individual who stated he was also using profanity. (Newman Dep. at 11-12.) Another consideration is that Officer Layne and Chief Mikels had been told that Plaintiff assaulted Roberson. They observed injuries on Roberson consistent with the assault. The Defendants were dealing with a person they believed had assaulted another and was directing profanity at them. We find that

Plaintiff engaged in 'fighting words' and used abusive or obscene language in a manner "likely to provoke a violent or disorderly response" rather than engaging in protected speech. We find there is no First Amendment violation, therefore defendants are entitled to qualified immunity. Accordingly, Defendants' motion for summary judgment as to the First Amendment violation is GRANTED and this claim is DISMISSED WITH PREJUDICE.

## 2. False arrest

Plaintiff did not specifically plead a Fourth Amendment violation but alleges a claim of false arrest because the officers did not have probable cause to arrest him. If Plaintiff was arrested without probable cause, the arrest violated the Plaintiff's Fourth Amendment rights.

A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Probable cause exists if "at the moment the arrest was made...the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested committed the crime with which he was charged. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (9164).

Plaintiff claims Defendants had no probable cause.[4] Because we find that Plaintiff engaged in inappropriate conduct, we find Chief Mikles had probable cause to arrest Plaintiff in violation of Ark. Code Ann. § 5-71-207. We hold Plaintiff cannot show his arrest violated the Fourth Amendment, therefore Chief Mikels is entitled to qualified immunity on this claim.

**B. Plaintiff's Claim under 42 U.S.C. § 1985**

Plaintiff brings his claims under 42 U.S.C. § 1985. Section 1985 entitles a plaintiff to money damages when two or more persons act in furtherance of a conspiracy, "whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen fo the United States." 42 U.S.C. § 1985(3) (2005). Regarding the claim, "[t]he plaintiff must show that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th

---

[4] Plaintiff makes much of his argument that Chief Mikles was without authority to arrest him because Plaintiff lives in Hartford. Defendants submitted a copy of a "Mutual Aid Agreement" dated November 16, 1995, and signed by the Mayors and the Chiefs of Police of the cities of Hartford and Huntington which sets out the agreement. Plaintiff submitted an affidavit from his wife, Coletta Williams, that stated she spoke to two unnamed officials who had no knowledge of a "Mutual Aid Agreement". Defendants correctly contend that affidavits must be made on personal knowledge and contain facts which would be admissible in evidence. *See* Fed. R. Civ. Pro. 56(e). Mrs. Williams has no personal knowledge of the "Mutual Aid Agreement" and would not be allowed to testify to what she was told by two unnamed officials. Mrs. Williams inability to obtain a copy does not set forth a specific fact showing that there is a genuine issue for trial.

Cir. 1996) (*quoting Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).

Although Plaintiff alleges in his complaint this Court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1985, he sets out no facts to support a conspiracy. (Doc. 1.) Moreover, there are no allegations suggesting that any acts by Defendants were motivated by a "class-based, invidiously discriminatory animus." *Andrews*, 98 F.3d. at 1079. Plaintiff has not properly alleged a claim under § 1985 and this claim is DISMISSED WITH PREJUDICE.

**C. Plaintiff's Official Capacity Claims**

The claims against Chief Mikles and Officer Layne in their official capacities are deemed to be claims against the cities of Hartford and Huntington. *See Liebe v. Norton*, 157 F.3d 574, 578-79 (8th Cir. 1998). In a § 1983 action, a municipality may only be held liable for constitutional deprivations if the deprivation is the result of a policy or custom of the municipality. *Id*. A complaint that fails to allege that a constitutional injury was the result of an official policy or widespread custom of the municipality is "insufficient, on its face, to state a claim" against the municipality. *Springdale Educ. Assn. v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). Plaintiff's complaint does not allege that any constitutional injury was the result of an official policy or widespread custom of the cities. Plaintiff only references the cities in his complaint to show that

Chief Mikles was not "empowered to act as an officer...outside the City of Huntington" and that Plaintiff lived "within the City of Hartford." (Doc. 1 ¶ 39.) The complaint is thus insufficient, on its face, to state a claim against the cities. *See, e.g., Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735-36 (7th Cir. 1994)(dismissal of county school corporation proper when complaint failed to adequately allege policies or customs on part of corporation); *see also Springdale Educ. Assn.*, 133 F.3d at 651. We found no constitutional violations, but in any event, Plaintiff has not properly alleged a claim against the cities of Hartford and Huntington and these claims are DISMISSED WITH PREJUDICE.

**D. Conclusion**

In conclusion, the Court determines Defendants' motion for summary judgment as to Plaintiff's First Amendment claims is GRANTED. Summary judgment as to Plaintiff's claim of false arrest against Chief Mikles is GRANTED. Summary judgment as to Plaintiff's § 1985 claim and official capacity claims is GRANTED. Accordingly, Plaintiff's complaint as it relates to First Amendment, false arrest, official capacities, and § 1985 claims is DISMISSED WITH PREJUDICE. We decline to exercise jurisdiction pursuant to 28 U.S.C. § 1367 on Plaintiff's remaining state law claims and those claims are DISMISSED WITHOUT PREJUDICE. The jury trial scheduled for April 3, 2006, is hereby cancelled.

IT IS SO ORDERED this 27th day of March, 2006.

                                     /s/ Robert T. Dawson
                                     Hon. Robert T. Dawson
                                     United States District Judge